COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Humphreys
Argued by teleconference


CHARLES PAUL SMITH, JR.

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0492-01-2     JUDGE ROBERT J. HUMPHREYS
                                          JULY 23, 2002
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
                 W. Park Lemmond, Jr., Judge Designate

        C. David Whaley (Anthony G. Spencer;
        Morchower, Luxton & Whaley, on briefs), for
        appellant.

        Richard B. Smith, Senior Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


     Charles Paul Smith, Jr. appeals his conviction for two counts

of intentionally causing injury to the personal property of

another, in violation of Code § 18.2-137, after a bench trial in

which he was tried jointly with his wife Barbara Smith.[1]  Smith

contends the trial court erred in finding the evidence sufficient

as a matter of law to support the convictions, and in excluding

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.  Further, because this memorandum
opinion has no precedential value, we recite only those facts
necessary to our holding.

        [1] See Barbara Smith v. Commonwealth, Record #0491-01-2, this
day decided.

evidence establishing bias on the part of one of the complaining witnesses.  For the reasons that follow, we affirm the convictions.

## I.  Evidence of Bias

On appeal, Smith first argues that the trial court erred in "exclud[ing] . . . evidence indicating bias of the complaining witness, [Cameron Gilliam]."  We agree.

During Gilliam's testimony, counsel for Smith's wife and codefendant, Barbara Smith, asked, "Isn't it true you hired a lawyer to pursue a civil suit against Mrs. Smith?"  The trial court sustained the Commonwealth's objection, finding it was "not relevant."  Counsel for Smith adopted Mrs. Smith's argument in this regard.[2]

As an initial matter, the Commonwealth contends Smith "never asked to proffer Gilliam's answer to the question" asked

---

[2] After the trial, as he had been instructed to do by the trial court, Mrs. Smith's attorney made his proffer concerning his cross-examination of Gilliam, stating:

> I wanted to proffer that to show his bias, his motive to recoup monetary settlement with regard to the lost animals, and his motivation behind his testimony and subsequent prosecution.

> I would further proffer that I have personal knowledge that he was contacted by an attorney or that he contacted an attorney, rather, with regard to civil actions as that person attorney Herbert Maxey from Buckingham County contacted me specifically in regard to settlement of matters related to personal injuries and loss of the dogs.

-

concerning the potential civil suit during trial. However, the record demonstrates that Smith asked to make the proffer immediately after the trial court's ruling on the Commonwealth's objection in this regard and ultimately made it just after the final ruling, as instructed by the court. We find Smith's proffer that Gilliam contacted an attorney regarding a civil suit to be sufficient.[3] Thus, we address the merits of Smith's argument.

It is a fundamental proposition that great latitude is allowed on cross-examination, and the general rule is that anything tending to show bias on the part of the witness may be drawn out.[4] Indeed, "[t]he right of an accused to cross-examine prosecution witnesses to show bias or motivation, when not abused, is absolute."[5] Thus, questions which attempt to show that a witness is biased and his testimony unreliable because it is induced by considerations of self-interest are always relevant.[6] Accordingly, under the facts of this case, we hold

---

[3] Whittaker v. Commonwealth, 217 Va. 966, 969, 234 S.E.2d 79, 81 (1977) ("[I]n the interest of orderly litigation and appellate review, we hold that a unilateral avowal of counsel, if unchallenged, . . . of the testimony expected constitutes a proper proffer . . . .").

[4] Corvin v. Commonwealth, 13 Va. App. 296, 300, 411 S.E.2d 235, 238 (1991).

[5] Hewitt v. Commonwealth, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984).

[6] Banks v. Commonwealth, 16 Va. App. 959, 962, 434 S.E.2d 681, 683 (1993).

-

the trial court erred in refusing to allow Smith's counsel to question Gilliam regarding the potential civil suit.

Next, we must determine whether the trial court's error in restricting Smith's right to cross-examination was harmless beyond a reasonable doubt.[7]  We find that it was.

The correct inquiry in determining harmless error in cases such as this, "'"is whether, assuming that the damaging potential of the cross-examination were fully realized, [we] might nonetheless say that the error was harmless beyond a reasonable doubt."'"[8]  Therefore, our harmless error analysis is similar to harmless error review in cases of improperly admitted evidence, where the error is held harmless if the record contains "overwhelming" evidence of guilt.[9]  In this case, Gilliam's testimony is the "improper" evidence we evaluate, to determine its effect, if any, on the verdict.

Our analysis of the effect of Gilliam's testimony is guided by specific factors.  In determining whether the trial court's error in limiting appellant's right to cross-examine Gilliam was harmless, we evaluate:

---

[7] Scott v. Commonwealth, 25 Va. App. 36, 42-43, 486 S.E.2d 120, 123 (1997).

[8] Id. (quoting Maynard v. Commonwealth, 11 Va. App. 437, 448, 399 S.E.2d 635, 641 (1990) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986))).

[9] Id.

-

> "'the importance of [Gilliam's] testimony in the prosecution's case, whether [Gilliam's] testimony was cumulative, the presence or absence of evidence corroborating or contradicting [Gilliam's] testimony on material points, the extent of cross-examination [of Gilliam] otherwise permitted and, of course, the overall strength of the prosecution's case.'"[10]

We find that the error was harmless with regard to each of Smith's convictions. Indeed, the other complaining witness, Terry Collins, corroborated Gilliam's testimony in almost every respect. In addition, the testimony of the law enforcement officers and the veterinarian who performed autopsies on the two dogs further corroborated Gilliam's testimony. Thus, Gilliam's testimony was merely cumulative. Accordingly, we find that the trial court's error in this regard was harmless beyond a reasonable doubt.

## II. Sufficiency of the Evidence

Smith next contends the evidence was insufficient as a matter of law to establish he shot the dogs and caused damage to their collars, as it did not exclude every reasonable hypothesis except that of guilt. Specifically, Smith argues the evidence reasonably incriminates his wife, Barbara Smith. We disagree with Smith's analysis.

> When a defendant challenges the sufficiency of the evidence on appeal, the reviewing

---

[10] Id. (quoting Williams v. Commonwealth, 4 Va. App. 53, 78-79, 354 S.E.2d 79, 93 (1987) (quoting Van Arsdall, 475 U.S. at 684)).

-

court must give the judgment of the trial court sitting without a jury the same weight as a jury verdict. The appellate court has the duty to examine the evidence that tends to support the conviction and to uphold the conviction unless it is plainly wrong or without evidence to support it.[11]

Here, although Smith testified that he killed the dogs, he did not testify to this until after he had rested his case, and after the trial court had rendered its verdict of guilt concerning the charges against him. Thus, since the issue is whether the evidence adduced at Smith's trial was sufficient as a matter of law beyond a reasonable doubt, the Commonwealth's contention that his post-trial testimony can be used to support his convictions is without merit.

However, "[c]ircumstantial evidence 'is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'"[12] "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant."[13] Indeed, the credibility of a witness and the inferences to be

---

[11] McCain v. Commonwealth, 261 Va. 483, 492-93, 545 S.E.2d 541, 547 (2001).

[12] Taylor v. Commonwealth, 33 Va. App. 735, 737, 536 S.E.2d 922, 923 (2000) (quoting Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983)).

[13] Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

-

drawn from proven facts are matters solely for the fact finder's determination.[14]

The evidence presented before the trial court rendered its verdict with regard to Smith proved: 1) the hunting dogs belonging to Gilliam and Collins ran onto the Smith property; 2) shortly thereafter, three gunshots were heard and the dogs went silent; 3) the truck was observed parked with its driver's side alongside the woods, only a few yards from where the bodies of the dogs were found; 4) only the driver's side door was open as the truck was parked next to the woods; 5) the driver then got into the truck, closed the driver's side door and drove the truck toward Gilliam and Collins; 5) Smith was then seen driving the truck, while Mrs. Smith sat in the passenger side; 6) a .22 rifle was found in the truck bed; 7) Smith had a clip of .22 bullets in his pocket; and 8) a .22 bullet matching the rifle was taken from one dog.

Based on this evidence, the trial court specifically found Smith guilty as a principal in the second degree, finding that the evidence demonstrated he acted in concert with Mrs. Smith. Indeed, with the exception of Mrs. Smith's demeanor, no evidence tended to suggest that she alone caused the damage to the dogs and/or the hunting equipment attached to the dogs. Thus, viewing the evidence in the light we must, we do not find the convictions

---

[14] See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

here were plainly wrong or without competent evidence in support thereof.

### III.  Code § 18.2-137

Smith finally argues that the trial court erred in finding the evidence sufficient to establish a conviction under Code § 18.2-137.  Specifically, Smith contends the General Assembly intended the shooting of another person's dog to be prosecuted under Code § 18.2-144, which makes it a crime to shoot a person's companion animal.

First, "[i]t is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney,"[15] and it is not a legally cognizable argument for Smith to complain that he was tried for one crime rather than the different offenses that may have arisen from his conduct.[16]

Code § 18.2-137 provides "[i]f any person unlawfully destroys, defaces [or] damages . . . any property, real or personal, not his own . . . he shall be guilty of . . . a Class 1 misdemeanor if the value of or damage to the property . . . is less than $1,000."  Code § 3.1-796.127 specifically defines "[a]ll dogs and cats [as] personal property."  In addition, the Supreme

---

[15] Kauffmann v. Commonwealth, 8 Va. App. 400, 410, 382 S.E.2d 279, 284 (1989) (citing Davis v. Commonwealth, 4 Va. App. 27, 30, 353 S.E.2d 905, 907 (1987)).

[16] See id.

Court of Virginia has defined the term "destroy," in the context of insurance policies, as often being "applied to an act which renders the subject useless for its intended purpose, though it does not literally demolish or annihilate it."[17] Further, Code § 3.1-796.114 allows any humane investigator to "lawfully cause to be destroyed" animals found abandoned or not properly cared for, under certain circumstances. Code § 3.1-796.115 allows the court to order an animal to be "humanely destroyed" if the court determines that the animal has been abandoned, cruelly treated, or deprived of adequate care. Thus, it is clear that Smith's actions in killing the dogs fell logically within the proscription of Code § 18.2-137.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

---

[17] Lumbermen's Mutual Casualty Co. v. Keller, 249 Va. 458, 460-61, 456 S.E.2d 525, 526 (1995) (citing Black's Law Dictionary 449 (6th ed. 1990)).

-